IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


LARRY and ANNE CLEMENTS,
on behalf of themselves
and all others similarly situated                                                    PLAINTIFFS


V.                                    Civil No. 4:13-cv-4048


DIRECTV, LLC                                                                         DEFENDANT



**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant DIRECTV, LLC's ("DIRECTV") Motion to Dismiss

and/or Stay Proceedings Pending Arbitration and to Compel Arbitration (ECF No. 15).  Plaintiffs

Larry and Anne Clements have responded.  (ECF No. 42).  DIRECTV has replied.  (ECF No.

48).  The Court finds the matter ripe for consideration.[1]

BACKGROUND

This case involves a payment dispute arising from Plaintiffs' accounts with DIRECTV.

DIRECTV asserts the dispute is not properly before this Court due to an arbitration provision in

its Customer Agreement with Plaintiffs.  The relevant provision of the Customer Agreement

reads as follows:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF
> YOUR RECEIPT OF AND PAYMENT FOR DIRECTV
> SERVICE AND IS SUBJECT TO ARBITRATION
> (SECTION 9) AND DISCLAIMER OF WARRANTIES
> (SECTION 8).  IF YOU DO NOT ACCEPT THESE TERMS,
> PLEASE NOTIFY US IMMEDIATELY AND WE WILL**

---

[1]Plaintiffs filed a Motion to Certify (ECF No. 37) certain issues to the Arkansas Supreme Court.  "Absent a close
question of state law or a lack of state guidance, a federal court should determine all issues before it."  *Willsey v.
Shelter Mut. Ins. Co.*, 2013 WL 4453122, at *1 (W.D. Ark. Aug. 16, 2013).  The question of certification is
committed to the sound discretion of the district court.  *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir. 1996).
Upon consideration of the issues presented in this case, the Court concludes that certification to the Arkansas
Supreme Court is not warranted.  Accordingly, Plaintiffs' Motion to Certify (ECF No. 37) is **DENIED**.

**CANCEL YOUR ORDER OR SERVICE.  IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

**9. RESOLVING DISPUTES**

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows . . .

(b) Formal Resolution: [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAM Rules") and under the rules set forth in this Agreement.  If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern.  **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** [2]

(ECF No. 16-9).  Generally, DIRECTV distributes Customer Agreements to customers on two occasions: (1) when customers initiate service and (2) when DIRECTV updates the agreement. DIRECTV distributes the agreements via e-mail or the United States Postal Service ("USPS"), depending on a customer's preference.

In this case, Plaintiffs preferred receiving correspondence from DIRECTV through USPS.  Accordingly, DIRECTV sent Plaintiffs their first Customer Agreement with their billing statement on December 9, 2005, when Plaintiffs initiated service.  Subsequently, DIRECTV sent Plaintiffs updated Customer Agreements with their billing statements on May 9, 2006, May 9, 2007, and May 9, 2009.

On May 28, 2010, Plaintiffs signed up for a second DIRECTV account, and DIRECTV sent Plaintiffs a confirmation letter on that same day confirming the details of the order.  The

---

[2]This is the language from DIRECTV's 2012 Customer Agreement.  In their Opposition Brief, Plaintiffs address their arguments to the 2012 Customer Agreement. (ECF No. 42).

confirmation letter asked Plaintiffs to familiarize themselves with the Customer Agreement on DIRECTV's website.  (ECF No. 16-7).  Additionally, the letter asked Plaintiffs to "[p]lease take a moment to . . . review[] the Terms and Conditions on the reverse side of [the] letter."  *Id.*  The reverse side stated:

> You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV, which cannot be resolved informally, will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement (a copy is sent with your first bill but may also be viewed at directv.com/legal).  Arbitration means you waive your right to a jury trial.

*Id.*  On May 29, 2010, DIRECTV mailed Plaintiffs their first billing statement for the second account along with a copy of the 2010 Customer Agreement.  Later, in April 2011 and June 2012, DIRECTV mailed Plaintiffs updated Customer Agreements.

In late 2012, Plaintiffs' television began experiencing reception problems.  In response to the problems, Plaintiffs called DIRECTV with hopes of having the issue fixed.  However, after several phone calls, the issue was not resolved.  Plaintiffs then wrote DIRECTV a letter complaining about a reception problem, DIRECTV's failure to remedy the problem, and their negative experiences with DIRECTV's customer service.  In the letter, Plaintiffs informed DIRECTV they planned to stop paying DIRECTV for service.

After Plaintiffs stopped paying their DIRECTV balance, DIRECTV reduced their service to a minimum level, and on December 29, 2012, DIRECTV disconnected their service.  At the time DIRECTV disconnected service, DIRECTV states that Plaintiffs owed a total of $479.10.  To collect the $479.10 balance, on January 18, 2013, DIRECTV initiated a charge on Plaintiffs' debit card.

On March 19, 2013, Plaintiffs filed this class action against DIRECTV alleging that DIRECTV unlawfully initiates charges on its customers' credit and debit card accounts.[3] DIRECTV then filed this Motion to Dismiss and/or Stay Proceedings Pending Arbitration and to Compel Arbitration.

## DISCUSSION

The Federal Arbitration Act ("FAA") "establishes a liberal federal policy favoring arbitration agreements." *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (citations omitted).  In considering a motion to compel arbitration, courts generally apply a two-part test: (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.  *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007).  In this case, Plaintiffs contest the first part of the test—the validity of the arbitration agreement.

Whether an agreement is valid is governed by state contract law.  *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007).  Under Arkansas law, to have a valid contract, there must be: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement, and (5) mutual obligations. *Diversicare Leasing Corp., v. Nowlin*, No. 11-cv-1037, 2011 WL 5827208, at *3 (W.D. Ark. Nov. 8, 2011).  Further, even if all five elements are met, an agreement can be deemed unenforceable where there is evidence of fraud, duress, or unconscionability.  *Weaver v. Edward D. Jones & Co., L.P.*, No. 4:10-cv-00227, 2010 WL2366027, at *2 (E.D. Ark. June 10, 2010).

In this case, Plaintiffs contest the validity and enforceability of the arbitration clause as well as the validity and enforceability of the Customer Agreement as a whole.   The Court will

---

[3]Plaintiffs originally filed suit in state court.  DIRECTV then removed the action to this Court on May 10, 2013. Subsequently, on February 27, 2014, this Court denied Plaintiffs' Motion to Remand.

first discuss Plaintiffs' challenges to the arbitration clause.  Second, the Court will address Plaintiffs' challenges to the Customer Agreement.

### 1.  Arbitration Clause

Plaintiffs argue that the arbitration clause is invalid and unenforceable because: (A) Plaintiffs and DIRECTV did not enter into a mutual agreement to arbitrate; (B) the clause does not mutually obligate both Plaintiffs and DIRECTV; (C) the arbitration clause contains a class waiver; and (D) the clause is unconscionable

#### A. Mutual Agreement

Plaintiffs first assert that the arbitration clause is invalid because they did not enter into a mutual agreement with DIRECTV to arbitrate disputes.  DIRECTV contends that a mutual agreement is evidenced by the Customer Agreement containing the arbitration provision that DIRECTV mailed to Plaintiffs.  Specifically, DIRECTV asserts that it sent the Customer Agreement to Plaintiffs in the mail with their bill when they activated their accounts and when DIRECTV updated the agreement.  In response, Plaintiffs assert there is insufficient evidence to establish that they ever received a Customer Agreement in the mail from DIRECTV.

In making their argument, Plaintiffs rely on *Alltel Corp. v. Sumner*, 360 Ark. 574, 203 S.W.3d 77 (2005).  In *Sumner*, customers filed a class action complaint against their cell phone provider.  *Id.* at 574, 203 S.W.3d at 78.  The provider moved to compel arbitration.  *Id.* The customers opposed the motion arguing that they had no notice of the arbitration clause.  *Id.* at 577, 203 S.W.3d at 80.  To prove that the customers had notice of the clause, the provider offered an affidavit from an employee stating that it was the practice and procedure to provide copies of the service agreement containing an arbitration clause to customers prior to the initiation of service.  *Id.*  The Arkansas Supreme Court held that the affidavits were insufficient

to establish a mutual agreement. *Id.* at 578, 203 S.W.3d at 81.  The court reasoned that the affidavits merely confirmed the provider's practices and procedures but did not offer any information regarding whether those practices and procedures were followed at the time the customers subscribed to service. *Id.*  The Court noted that "there must be specific evidence that the company implemented those practices and procedures such that notice to the affected party can be reasonably inferred from the circumstance." *Id.*

In this case, unlike in *Sumner*, the Court finds that DIRECTV offers sufficient evidence to establish a mutual agreement to arbitrate existed between DIRCTV and Plaintiffs.  DIRECTV offers affidavits from employees stating that DIRECTV has a practice and procedure of sending Customer Agreements containing the arbitration provision to customers when they first initiate service and when DIRECTV updates the agreements.  DIRECTV then provides specific evidence that these practices and procedures were followed when Plaintiffs subscribed to DIRECTV.  Specifically, DIRECTV offers: (1) copies of Customer Agreements containing the arbitration provision from the years Plaintiffs subscribed to DIRECTV; (2) a copy of the bill DIRECTV sent to Plaintiffs in May 2010 with Plaintiffs' name and address on the front of the bill and the arbitration clause appearing on the back; and (3) a mailing list for the distribution of updated Customers Agreements that DIRECTV sent in June 2012 that includes Plaintiffs' name and address.  These documents provide specific evidence that DIRECTV followed the practice and procedure of distributing Customer Agreements containing the arbitration provision to customers when Plaintiffs subscribed to DIRECTV.  Accordingly, the Court finds that notice of the arbitration provision to Plaintiffs can be reasonably inferred and a mutual agreement to arbitrate disputes existed between Plaintiffs and DIRECTV.

B. Mutuality of Obligation

Plaintiffs additionally argue that the arbitration provision lacks mutuality of obligations because the clause requires them to arbitrate disputes arising under the agreement but reserves DIRECTV's ability to sue.  Plaintiffs argue that Arkansas law invalidates arbitration clauses that lack mutuality of obligations.  DIRECTV assert that Plaintiffs' mutuality-of-obligation argument is preempted by the FAA.

The Court agrees with DIRECTV.  Although state law is applied to determine whether an arbitration agreement is valid, a court "may not invalidate an arbitration agreement under any state law applicable only to arbitration provisions."  *Enderline v. XM Satellite Radio Holdings, Inc.*, No. 4:06-cv-0032 GTE, 2008 WL 830262, at *8 (E.D. Ark. March 25, 2008) (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L.Ed. 2d 902 (1996)).  Accordingly, while lack of mutuality is a general contract defense, the Eighth Circuit has held that state laws requiring "mutuality within the arbitration paragraph itself [are] preempted by FAA because it places the arbitration clause on unequal footing with other contract terms that do not have to be mutual."  *Weaver*, 2010 WL2366027, at *2 (citing *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963, 967 (8th Cir. 2009)).  Thus, in this case, the Court need not determine whether the arbitration provision mutually obligates the parties.  Under the FAA, even if DIRECTV's arbitration clause lacks mutuality of obligation, the provision is valid.

C.  Class Waiver

Plaintiffs also claim that the arbitration clause is invalid because it forbids customers from asserting claims together as a class.  Again, Plaintiffs argue that Arkansas law invalidates arbitration clauses that prohibit customers from joining or consolidating claims.  DIRECTV

argues that the United States Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 179 L.Ed.2d 742 (2011) forecloses Plaintiffs' argument.  The Court agrees with DIRECTV.  In *Concepicion*, the Supreme Court held that any state law "[r]equirng the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *Id.* at 1748.  Accordingly, in this case, whether or not the arbitration clause includes a class waiver is immaterial.

### D. Unconscionability

Plaintiffs additionally argue that the arbitration clause is unenforceable due to unconscionability.  The Arkansas Supreme Court has described an unconscionable contract as one that "'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'"  *LegalZoom.com, Inc. v. McIllwain*, ___ S.W.3d ___, 2013 Ark. 370, at *4 (quoting James J. White & Robert S. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4-1 (3d ed. 1988)).  To prevail on an unconscionability challenge, Plaintiffs must prove both procedural and substantive unconscionability.  *Barnard v. Townsquares Media, LLC*, No. 12-cv-4110, 2013 WL 1755581, at *3, (W.D. Ark. April 24, 2013) (citations omitted).  "Procedural unconscionability deals with the manner in which a contract was entered into."  *Id.* (quotations omitted).  "It considers 'whether the aggrieved party was made aware of and comprehended the provision in question.'"  *Id.* (quoting *State ex rel. Bryant v. R & A Inv. Co., Inc.*, 336 Ark. 289, 296, 985 S.W.2d 299, 302 (1999)).  "[S]ubstantive unsconscionability . . . looks to the terms of the contract and whether they are harsh, one-sided, or oppressive."  *Id.* (quotations omitted).

Plaintiffs maintain that the arbitration provision is procedurally unconscionable for three reasons: (1) the clause incorporates the JAMS rules and other statutes; (2) DIRECTV does not

have policies and procedures for arbitration; and (3) DIRECTV never advised them of arbitration after Plaintiffs expressed dissatisfaction with service.   The Court finds these arguments unpersuasive.  As to the incorporation of the JAMS rules and other statutes, the incorporation is clear and unambiguous, and the JAMS rules and statues are readily available to the public. Further, Plaintiffs' second and third arguments are irrelevant to procedural unconscionability. The fact that DIRECTCV does not possess arbitration policies and procedures is irrelevant to the manner in which Plaintiffs and DIRECTV entered into the agreement, and Plaintiffs provide no argument as to why it would.  Further, Plaintiffs complained to DIRECTV about service in late 2012, well after Plaintiffs entered into an arbitration agreement with DIRECTV.

 For the reasons above, Plaintiffs have failed to show that the arbitration clause is procedurally unconscionable.  Because an unconscionability challenge requires proof of both procedural and substantial unconscionability, the Court need not address whether the arbitration clause is substantively unsconscionable. *See id.*

### 2.  Customer Agreement

Plaintiffs argue that the Customer Agreement is: (1) invalid for lack of mutual obligation; (2) unenforceable under the Statute of Frauds; and (3) unenforceable for unconscionabiliy.[4] DIRECTV argues that Plaintiffs' challenges to the Customer Agreement are irrelevant in a motion to compel arbitration.  Specifically, DIRECTV argues that the validity and enforceability of the Customer Agreement as a whole is a question for the arbitrator.

The Court agrees with DIRECTV.  A court must enforce a "specific agreement to arbitrate" despite a litigant's challenges to the contract as whole or to another provision of the

---

[4]Plaintiffs assert that the Customer Agreement is procedurally unconscionable because the agreement is adhesive, customers need a "magnifying glass to attempt to read the [Customer Agreement]," and the contract is difficult for a layperson to understand.  (ECF No. 42).  Plaintiffs assert the Customer Agreement is substantively unconscionable because the terms are "lopsided in DIRECTV's favor."

contract. *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1157 (8th Cir. 2012) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2778 (2010)). Thus, any challenge to the validity of the whole contract "'should . . . be considered by an arbitrator, not a court.'" *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 446, 126 S. Ct. 1204). In this case, Plaintiffs argue that the "entirety of the [Customer Agreement] does not contain mutual obligations," the "[Customer Agreement] is unenforceable under the Arkansas Statute of Frauds," and the customer agreement is unconscionable. (ECF No. 42). Plaintiffs' arguments challenge the Customer Agreement as a whole. Accordingly, these arguments are for the arbitrator to consider, not this Court.

## CONCLUSION

For the reasons stated above, the Court finds that the arbitration agreement is valid and enforceable. Accordingly, the Court finds that Defendant's Motion to Stay Proceedings Pending Arbitration and to Compel Abritration (ECF No. 15) should be and hereby is **GRANTED**. Plaintiffs' claims are referred to arbitration in accordance with the parties' agreement. The matter is hereby stayed and administratively terminated pursuant to 9 U.S.C. § 3, without prejudice to the right of the parties to reopen the proceedings to enforce the arbitrator's decision.

**IT IS SO ORDERED**, this 26th day of March, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge